Michael S. Elkin (admitted *pro hac vice*)
melkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel:   (212) 294-6700
Fax:   (212) 294-4700

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Diana L. Hughes (SBN: 267606)
dhughes@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5802
Tel:   (415) 591-1000
Fax:   (415) 591-1400

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles CA 90071-1543
Tel:   (213) 615-1700
Fax:   (213) 615-1750

Attorneys for Defendant
FC2, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DREAMROOM PRODUCTIONS, INC., a California corporation,<br><br>        Plaintiff,<br><br>     vs.<br><br>FC2, INC., a Nevada Corporation, and DOES 1 through 10, inclusive,<br><br>        Defendants. | **Case No. CV13-01834-JFW (JEMx)**<br><br>**FC2'S NOTICE OF MOTION AND MOTION TO ENFORCE THE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       May 12, 2014<br>Time:       1:30 PM<br>Courtroom: 16<br>Judge:      Hon. John F. Walter |

*Winston & Strawn LLP*
*333 S. Grand Avenue*
*Los Angeles, CA 90071-1543*

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   TO PLAINTIFF AND ITS COUNSEL OF RECORD:

2   PLEASE TAKE NOTICE that on May 12, 2014, at 1:30 p.m., in the Courtroom

3   of the Honorable John F. Walter, 312 N. Spring Street, Los Angeles, California

4   90012, Defendant FC2, Inc. ("FC2") will and does hereby move to enforce settlement.

5   This motion is based on the grounds that the parties reached a settlement of this

6   case which should be enforced.

7   This motion is based upon this Notice, the attached Memorandum of Points and

8   Authorities, the accompanying Declarations of Ryo Takahashi ("Takahashi Decl.")

9   and Jennifer A. Golinveaux ("Golinveaux Decl."), the exhibits attached thereto, and

10   upon such other and further evidence and argument as may be presented to the Court

11   prior to or at the time of hearing on this motion.

12   This motion is made following the conference of counsel pursuant to L.R. 7-3

13   that took place on April 7, 2014.

14

15   Dated: April 14, 2014                     WINSTON & STRAWN LLP

16

17                                             By:  */s/ Erin R. Ranahan*
18                                                  Michael S. Elkin
                                                    Jennifer A. Golinveaux
19                                                  Diana L. Hughes
                                                    Erin R. Ranahan

20

21

22

23

24

25

26

27

28

i
FC2's Notice of Motion and Motion to Enforce the Settlement;
Memo of P's & A's
Case No. CV13-01834-JFW (JEMx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The parties settled this case, agreeing to all material terms and informing the Court repeatedly that the matter was settled. Dkt. Nos. 33, 37, 39. But Plaintiff ("Dreamroom") has refused to honor its agreement with Defendant ("FC2"), backing out at the last minute and forcing this matter into trial next month, apparently in an effort to renegotiate a more favorable settlement while avoiding the prior pre-trial schedule under which Dreamroom was faced with the threat of FC2's pending motion to compel, FC2's intended summary judgment motion, and the failure to meet and confer on its own summary judgment motion. Dkt. Nos. 28-31, 45-46. Dreamroom's plan has worked so far. The Court should not reward Dreamroom for its dilatory conduct and permit it to avoid the settlement of this litigation to which the parties intended and agreed. For these and all of the following reasons, FC2 respectfully requests that the Court enforce the parties' settlement.

## II.   FACTUAL BACKGROUND

### A.    This Action

FC2 offers an Internet service, FC2 Video, that allows users to upload and share videos with other Internet users. Dreamroom produces Japanese-language adult content videos, which it distributes on DVD and via the Internet. The underlying suit involves Dreamroom's allegations that some of the material posted to FC2 Video by one of FC2's users infringed Dreamroom's alleged copyrights, and that FC2 should be held liable for those alleged infringements. *See* Dkt. No. 1, Complaint ¶¶ 4, 31, & Ex. A.

### B.    The Parties' Mediation and Settlement of This Action

On December 20, 2013 the parties engaged in a mediation. Takahashi Decl. ¶ 2. Ryo Takahashi, the owner and CEO of FC2, attended as the principal for FC2. *Id.* ¶ 2. At the beginning of the mediation, Eita Asama, the principal in charge of this

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1
FC2's Notice of Motion and Motion to Enforce the Settlement;
Memo of P's & A's
Case No. CV13-01834-JFW (JEMx)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

litigation and with authority to settle it on behalf of Dreamroom, requested that he and Mr. Takahashi meet separately from the lawyers. Takahashi Decl. ¶ 2. Mr. Takahashi made it clear that his preference was for everyone to meet together in a joint session, but Mr. Asama insisted that they meet privately as a condition of continuing the mediation. *Id.* ¶ 2.

Mssrs. Asama and Takahashi proceeded to meet privately at the mediation and had a candid and productive conversation. *Id.* ¶ 3. During that meeting, the parties determined all of the material terms of the settlement and agreed to settle the case, intending that their oral agreement be a binding settlement. During the meeting, the two reached a settlement of the litigation in principle pursuant to which:

    **(1)**    FC2 would provide Dreamroom with valuable space on the FC2 website to distribute Dreamroom's content;

    **(2)**    FC2 would provide Dreamroom with a tool to expedite takedowns of user uploaded videos that infringed Dreamroom's copyrights; and

    **(3)**    FC2 would not pay any money to Dreamroom as part of the settlement, and the parties would each cover their own expenses in connection with the litigation.

*Id.* ¶ 3.

Mr. Asama did not represent to Mr. Takahashi that the settlement agreement would take effect only when it was written and signed. *Id.* ¶ 4. He also never indicated that he believed that FC2 and Dreamroom had not entered into a binding settlement agreement. *Id.* ¶ 4. Similarly, Mr. Takahashi understood the agreement reached between Mr. Asama and himself on December 20, 2013 to be a binding settlement agreement. *Id.* ¶ 5. He believed that any written documentation of the agreement would be a summary of the terms that Mr. Asama and he agreed to on December 20, 2013 and would finalize the details of the hosting arrangement. *Id.* ¶ 5. Mr. Takahashi then authorized counsel for FC2 to finalize the details of the hosting arrangement and

memorialize the terms to which he and Mr. Asama had agreed in a settlement agreement, and authorized counsel for FC2 to file a Joint Stipulation and Notice of Settlement on December 23, 2013. Takahashi Decl. ¶ 6.

In accordance with the parties' agreement, the parties filed a Joint Stipulation and Notice of Settlement on December 23, 2013, notifying the Court that "**the parties have reached a settlement in principle**" of the case. Dkt. No. 33, Joint Stipulation and Notice of Settlement (emphasis added). The parties further informed the Court that they were "in the process of finalizing the agreement in writing and anticipate the filing of a Stipulation to Dismissal of Action with Prejudice by January 31, 2014." *Id*. Based upon their settlement, the parties further "stipulate[d] and request[ed] this Court to vacate all non-discovery related dates currently on calendar for" the case. *Id*.

### C.  Dreamroom's Attempts to Renege on the Settlement Agreement

Subsequent to the mediation and settlement, counsel for FC2 and Dreamroom, respectively, worked through the details of the settlement agreement by phone and email. Golinveaux Decl. ¶ 2. As of March 12, 2014, all of the details had been finalized except for one, which had to do with one detail of the hosting arrangement, and which counsel for Dreamroom acknowledged "was not significant."   Golinveaux Decl. ¶ 3, & Ex. 1. Nonetheless, on March 31, 2014, counsel for Dreamroom informed counsel for FC2 that Dreamroom would not execute the settlement for reasons entirely unrelated to the negotiation of the final detail of the settlement. Golinveaux Decl. ¶ 4.

When pressed for a reason by FC2's counsel, Dreamroom claimed that the reason had to do with "new information" regarding "videos of beastiality (sic) and what appears to be underage pornography on FC2" and that "the incidents of infringement of Dreamroom content continue on FC2." *Id*. ¶ 5. When FC2's counsel reminded Dreamroom's counsel that any such material was in direct violation of FC2's Terms of Use, and asked her to identify it so that FC2 could promptly deal with it, Dreamroom's counsel ignored the request. *Id*. ¶ 6. More than a week later, on April

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

8, 2014, Dreamroom's counsel finally sent a letter listing certain videos that had been uploaded to FC2 video by users that she claimed were the previously mentioned "bestiality" videos that resulted in Dreamroom reneging on settlement. Golinveaux Decl. ¶ 7.  When FC2 checked the videos that same day, every one of them had already been terminated the month before as part of FC2's standard practice of terminating content that violates its Terms of Use. Takahashi Decl. ¶ 8.  At least one of the videos was terminated *the same day it was uploaded*.  *Id*. ¶ 8. To date, Dreamroom has never identified to FC2 the alleged videos depicting "apparent child pornography." Golinveaux Decl. ¶ 8.

Then, on April 11, 2014 Dreamroom's counsel filed a motion for leave to file an amended complaint, requesting that this Court allow it to add 270 new alleged infringements to the case (presumably the ongoing "infringement" that Dreamroom claimed to justify reneging on the parties' settlement) and deny FC2 the opportunity to conduct any discovery of the alleged infringements (on such fundamental issues as chain of title for the alleged infringed works and whether the uploaders to FC2 were agents of Dreamroom) before going to trial on the new videos in five weeks. Dkt. No. 47. While Dreamroom implies in its Motion that these are new infringements, in fact the 270 new allegedly infringing videos that Dreamroom now identifies were posted on FC2 Video as early as 2011. Takahashi Decl. ¶ 9.  When FC2 checked its records over the past two days, it discovered that Dreamroom had continued to send takedown notices over the past several months while the parties were negotiating settlement.  *Id*. ¶ 10. Moreover, FC2 had already disabled every one of the 270 new allegedly infringing videos that were identified in those notices pursuant to FC2's policies and as contemplated in the parties' settlement. *Id.*

Dreamroom has known for years that FC2 Video is a UGC site that allows users to upload videos to the site. It is also familiar with FC2's Terms of Use that specifically prohibit unlawful and infringing content, and that FC2 promptly disables

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   such content when it becomes aware of it. *Id.* ¶ 5.

2       The words and conduct of the parties show a clear intent to settle the case in

3   December 2013 and, by Dreamroom's counsel's own admission, the only outstanding

4   business term to be decided was immaterial. As such, Dreamroom should not be

5   permitted to back out of the parties' settlement.

### D.   Dreamroom's Tactics In Backing Out of Settlement Have Allowed It To Avoid Discovery Rulings and Opposing Summary Judgment

7       As of December 23, 2013 FC2 had fully briefed its motion for summary

8   judgment and was prepared to file it. Golinveaux Decl. ¶ 9 & Ex. 1. Dreamroom,

9   however, had not prepared to file a summary judgment motion and had missed the

10  deadline to meet and confer on any such motion. *Id.* ¶ 9. FC2 refrained from timely

11  filing its summary judgment motion in reliance upon the parties' settlement

12  agreement; the parties filed a Notice of Settlement and the Court dismissed this case

13  without prejudice on the day that FC2 planned to file it. *Id.* ¶ 10. FC2 had also timely

14  noticed three depositions that were on schedule as of December 23, 2013 that were

15  taken off calendar given the dismissal of this case. *Id.* Finally, FC2's motion to

16  compel Dreamroom to respond to discovery was pending at the time the case was

17  dismissed. *See* Dkt. Nos. 28-29. Magistrate Judge McDermott had taken the motion

18  under submission on the papers but had not yet issued an order at the time this case

19  was dismissed. Dkt. No. 31.

## III.   LEGAL DISCUSSION

### A.   Legal Standard

22      "It is well-settled that a district court has the equitable power to enforce

23  summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d

24  888, 890 (9th Cir. 1987); *Decanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978);

25  *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986); *In re City Equities

26  Anaheim. Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). This inherent power has evolved as a

27  result of the "'high' judicial favor accorded the voluntary settlement of disputes." *In*

28

5

*re City Equities Anaheim. Ltd.*, 22 F.3d at 957.

A settlement agreement requires that the parties (1) intended to be bound by the agreement; (2) agreed on its material terms; and (3) either agreed to the terms of the settlement themselves or authorized their respective counsel to settle the dispute. *Millennium Dental Techs., Inc. v. Fotona, d.d.*, No. CV 09-1792-R, 2010 WL 3835056, at 13 (C.D. Cal. Sept. 30, 2010); *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977) (both parties or their authorized attorneys must agree to the terms of the settlement). California contract law applies to the interpretation of the settlement agreement. *United Commercial Ins. Svc., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) ("The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally.")  The Court must hold an evidentiary hearing if the material facts concerning the existence or terms of the settlement agreement are in dispute. *Callie*, 829 F.2d at 890.

**B.    The Court Should Enforce The Settlement**

**1.    FC2 and Dreamroom Intended to Be Bound by the Terms of Their Oral Settlement Agreement**

"Whether parties require further assent before being bound to a settlement agreement depends upon the intent of the parties as demonstrated by their words and conduct."  *Millennium Dental Techs.*, 2010 WL 3835056, at *13. This is an objective analysis, requiring examination of the manifested intent in the agreement and by the parties' conduct, rather than the parties' subjective belief. *United Commercial Ins. Svc., Inc.*, 962 F.2d at 856 (citing California case law). Thus, if the parties intended for the oral agreement to be binding, then they are bound even if they were going to later reduce it to writing. *See Oskar Sys., LLC v. Club Speed, Inc.*, No. CV 09-03854 AHM, 2011 WL 1296313, at *1 (C.D. Cal. Apr. 5, 2011).

For example, in a recent case decided in this District, the court granted a motion

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

to enforce the settlement agreement under similar facts. *Millennium Dental Techs.*, 2010 WL 3835056, at *14. There, counsel for both parties entered into an agreement over the phone. *Id.* at *4. Both parties intended to be bound by the agreement, as demonstrated by the seemingly authorized actions of each parties' counsel and the fact that the settlement was not contingent on a signed document. *Id.* at *7. In addition, the non-breaching party relied on the opposing party's representations that the case had settled by not filing its answer or counterclaims, and the parties signed a Notice of Settlement, which reflected that the parties had settled. *Id.* at *8. Thus, the Court found that the parties intended to enter into a binding settlement agreement. *Id.* at *13.

Likewise, the "words and conduct" of FC2 and Dreamroom show that both companies intended to be bound by the terms of settlement agreement reached at the December 20, 2013 mediation. *See Millennium Dental Techs.*, 2010 WL 3835056, at *13. At that mediation, the principles for each company met privately and agreed to the material terms of the agreement. Takahashi Decl. ¶¶ 2, 3; *see Oskar*, 2011 WL 1296313, at *2, 4. At no time did Mr. Asama represent to Mr. Takahashi that the settlement agreement was contingent on the parties stating its terms in writing or that he believed that FC2 and Dreamroom had not entered into a binding settlement agreement. Takahashi Decl. ¶ 4. Moreover, Mr. Takahashi understood the agreement reached between Mr. Asama and him to be a binding settlement agreement and that any documentation of the agreement would be a summary of the terms agreed to on December 20, 2013, including details of the hosting arrangement. Takahashi Decl. ¶ 5.

In reliance on the settlement agreement, FC2 and Dreamroom filed a Joint Stipulation and Notice of Settlement, thus representing to the Court that each party *believed they had settled the case*. Joint Stipulation and Notice of Settlement, Docket No. 33 at 1; Takahashi Decl. ¶ 7. This Court dismissed the action without prejudice. Order, Docket No. 35. FC2 would not have filed such a stipulation and notice if it did not believe that the matter was settled. Takahashi Decl. ¶ 7. Further, FC2 had prepared

7

1  and was ready to file its Motion for Summary Judgment, but did not file it in reliance
2  on the binding settlement agreement. Golinveaux Decl. ¶¶ 9, 10, & Ex. 2. If FC2 had
3  understood the settlement to not be binding, it would have filed its already-drafted
4  motion. Golinveaux Decl. ¶ 10. Lastly, Dreamroom anticipated filing a Stipulation to
5  Dismissal of Action with Prejudice soon after the mediation. Joint Stipulation and
6  Notice of Settlement, Dkt. No. 33. It is hard to imagine how Dreamroom could have
7  not intended the settlement to be binding but also foreseen a dismissal with prejudice.

8         **2.      FC2 and Dreamroom Agreed on All Material Terms of the**
9                 **Settlement Agreement**

10        On December 20, FC2 and Dreamroom did more than enter into an "agreement
11 to agree."  *See Oskar*, 2011 WL 1296313, at *1. In fact, the parties themselves agreed
12 on all material terms of the agreement, thus forming a binding settlement agreement.
13 *See Stephan v. Maloof*, 274 Cal. App. 2d 843, 848 (1969) ("[N]egotiations ordinarily
14 result in a binding contract when all of the terms are definitely understood, even
15 though the parties intend that a formal writing embodying these terms shall be
16 executed later."). Multiple edits and negotiations surrounding the finalized agreement
17 do not negate the settlement when the material terms were already agreed to by the
18 parties. *See Millennium Dental Techs., Inc.*, 2010 WL 3835056, at *9-11.  Similarly,
19 the discovery of facts unrelated to the settled claims or terms of the settlement
20 agreement is not grounds to rescind a complete settlement agreement.  *See* Cal. Civ.
21 Code § 1689.

22        Here, the principals for FC2 and Dreamroom agreed to a settlement in which
23 FC2 would allow Dreamroom to distribute its content on FC2; would provide
24 Dreamroom with a tool to expedite takedowns of user uploaded videos that infringed
25 Dreamroom's copyrights; and would not pay any money to Dreamroom and the
26 parties would each cover their own expenses in connection with the litigation.
27 Takahashi Decl. ¶ 3. Mr. Takahashi authorized counsel for FC2 to finalize the details

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

of the hosting arrangement between Dreamroom and FC2. Takahashi Decl. ¶ 6. FC2's counsel worked closely with Dreamroom's counsel to finalize these details, all of which were finalized except for one that Dreamroom's counsel acknowledge was not "significant." Golinveaux Decl. ¶¶ 2, 3.

Dreamroom's counsel acknowledged the immateriality of the sole remaining term that was outstanding at the time Dreamroom repudiated the agreement. She stated that, as of March 12, 2014, the percentage split in paragraph 6 was the only remaining term outstanding. Golinveaux Decl. ¶ 3. In subsequent correspondence regarding the same provision, she reiterated that "*the money involved was not significant and that it did not make sense to walk way* [sic] *based solely for that reason.*"  Golinveaux Decl., Ex.1 (emphasis added). Dreamroom's recognition that the agreement could proceed regardless of this term shows that it was immaterial, even if she tried to classify it otherwise. *See Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 210 (2006) (material term included one which was "critical," without which parties could not "do a deal.").

Dreamroom's eleventh hour excuse that some third party uploaded offensive content last year that had already been removed when it was identified to FC2 does not undo the settlement agreement. Dreamroom knew this content violated FC2's policies and did not bother to find out when such content was removed before asserting it as an excuse to dishonor the parties' agreement. Takahashi Decl. ¶ 8. Nor is Dreamroom's claim that it had recently discovered additional Dreamroom content on FC2's website a reason to unwind the settlement agreement. Many of the additional 270 allegedly infringing works that Dreamroom is attempting to add to this case five weeks before trial were uploaded years ago, and FC2 had promptly blocked every one that Dreamroom had identified to FC2 (as contemplated by the parties' settlement). Takahashi Decl. ¶ 9, 10. Dreamroom should not be permitted to back out of the settlement agreement on the pretext of "newly discovered" works, nor on the grounds

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

FC2'S NOTICE OF MOTION AND MOTION TO ENFORCE THE SETTLEMENT;
MEMO OF P'S & A'S
CASE NO. CV13-01834-JFW (JEMX)

1    that third parties posted offensive material on FC2's website that FC2 diligently and

2    promptly removed.

3    **IV.    CONCLUSION**

4            The parties agreed on the material terms of the settlement and satisfied the

5    necessary requirements for entering into a binding settlement agreement. For this

6    reason, FC2 respectfully requests that the Court enforce the settlement.

7

8    DATED: April 14, 2014                    Respectfully submitted,

9                                             WINSTON & STRAWN LLP

10

11                                            By: */s/  Erin R. Ranahan*
                                              _____
12

13                                            Michael S. Elkin (admitted *pro hac vice*)
                                                   WINSTON & STRAWN LLP
14                                                 200 Park Avenue
                                                   New York, New York 10166
15
                                              Jennifer A. Golinveaux (SBN: 203056)
16                                            Diana L. Hughes (SBN: 267606)
                                                   WINSTON & STRAWN LLP
17                                                 101 California Street
                                                   San Francisco, CA 94111-5802
18
                                              Erin R. Ranahan (SBN: 235286)
19                                                 WINSTON & STRAWN LLP
                                                   333 S. Grand Avenue
20                                                 Los Angeles, CA 90071-1543
21                                            Attorneys for Defendant
                                              FC2 INC.
22

23

24

25

26

27

28

FC2'S NOTICE OF MOTION AND MOTION TO ENFORCE THE SETTLEMENT;
MEMO OF P'S & A'S
CASE NO. CV13-01834-JFW (JEMX)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543